**LOCAL UNION NO. 59 OF the SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, Plaintiff,**

**v.**

**J. E. WORKMAN, INC., a Delaware corporation, and A & H Metals, Inc., a Delaware corporation, Defendants.**

**Civ. A. No. 4293.**

United States District Court,
D. Delaware.

May 12, 1972.

Harvey B. Rubenstein, Wilmington, Del., for plaintiff.

Daniel M. Kristol, Wilmington, Del., for defendants.

## OPINION

STEEL, District Judge.

Before the Court are motions by defendants to dismiss the complaint, as amended ("complaint"), by plaintiff for judgment on the pleadings as to the affirmative defenses, and by plaintiff to dismiss the counterclaim.

The complaint alleges that within the meaning of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, plaintiff is a labor organization representing employees in an industry affecting commerce and defendants, J. E. Workman, Inc. and A & H Metals, Inc. are employers whose activities affect commerce. On May 1, 1969, the plaintiff and Workman, through an employers association of which Workman is a member, entered into a collective bargaining agreement within the meaning of § 301 which remains in effect until April 30, 1973. Paragraphs 5, 6 and 7 allege:

"5. On or about March 4, 1971, defendant J. E. Workman, Inc. discontinued its sheet metal operations and laid off its employees doing that work who were members of plaintiff covered by the contract. On or about March 8 or 9, 1971, defendant J. E. Workman, Inc. advised plaintiff that defendant J. E. Workman, Inc.'s sheet metal operations were to be performed by non-union employees, despite defendant J. E. Workman, Inc.'s duty under Article III, Section 1 of the contract to employ only plaintiff's men to perform that work and plaintiff's duty under Article IV, Section 1 of the contract to supply men to perform that work when requested. On March 22, 1971, at defendant J. E. Workman, Inc.'s place of business, defendant A & H Metals, Inc. for the first time advised plaintiff that defendant J. E. Workman, Inc.'s sheet metal opera-

tions were to be performed only by non-union employees of defendant A & H Metals, Inc., a new company 'which was going to be non-union', whereupon plaintiff then advised defendant A & H Metals, Inc. that there was a contract outstanding with defendant J. E. Workman, Inc. for plaintiff to supply men to perform that work, whereupon defendant A & H Metals, Inc. then advised plaintiff that defendant A & H Metals, Inc. refused the offer of men to perform that work, rejected any contract with plaintiff, and stated again to plaintiff that defendant A & H Metals, Inc. 'was going to operate a non-union shop'. Defendant A & H Metals, Inc., a Delaware corporation, became incorporated in this state on March 25, 1971, and on or about that date commenced sheet metal operations at the same location as defendant J. E. Workman, Inc., with equipment, vehicles and inventory obtained from defendant J. E. Workman, Inc., with assistance from employees of defendant J. E. Workman, Inc., and for the same firms previously serviced by defendant J. E. Workman, Inc. At the time that defendant A & H Metals, Inc. commenced sheet metal operations, the range of skills and size of the work force was similar to the range of skills and size of the work force of defendant J. E. Workman, Inc. prior thereto; the services rendered were similar to the services rendered by defendant J. E. Workman, Inc. prior thereto; and the equipment used was similar to the equipment used by defendant J. E. Workman, Inc. prior thereto. One of the purposes of the transaction was to remove union employees from the work and replace them with non-union employees, thereby seeking to avoid the binding effect of the contract and resulting in the effective discrimination against union employees.

6. Defendant A & H Metals, Inc. is the successor employer to defendant J. E. Workman, Inc. through, by and upon its contract with plaintiff.

Upon demand by plaintiff, defendant A & H Metals, Inc. has refused to enter into the same contract to which plaintiff and defendant J. E. Workman, Inc. are parties.

7. Defendant J. E. Workman, Inc. assigned work to defendant A & H Metals, Inc. without that defendant agreeing in writing to comply with the conditions of employment stated in the contract in violation of Article II, Section 1 of the contract."

The complaint prays that the Court order the defendant A & H Metals, Inc. to execute the same contract to which plaintiff and Workman are parties and to award damages to plaintiff against defendants.

Jurisdiction is alleged under Section 301 of the L.M.R.A. of 1947, 29 U.S.C. § 185.

The answer alleges as affirmative defenses that the Court is without jurisdiction under § 301; that plaintiff has failed to exhaust its administrative remedies; that the disposition which the Regional Director of the NLRB made of the unfair labor practice charge which plaintiff filed is res judicata; and that the complaint fails to state a claim upon which relief can be granted.

A counterclaim alleges that the plaintiff brought the action wilfully, wantonly and without just cause to the harassment, damage and injury of defendants, and that the action constitutes an abuse of process. It prays for compensatory and punitive damages.

To the extent that defendants' motion to dismiss the complaint and the plaintiff's motion for judgment on the pleadings with respect to the affirmative defenses present overlapping points, they will be dealt with together.

### Jurisdiction

Jurisdiction is claimed under 29 U.S. C. § 185(a) which reads:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as de-

fined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The suit is for the violation of a labor contract between an employer and a labor organization. Workman is alleged to have violated Article III, Section 1 by advising plaintiff that its sheet metal operations were to be performed by non-union employees. Workman is also alleged to have violated Article II, Section 1 of its collective bargaining agreement with plaintiff by assigning work to A & H Metals, Inc. without requiring A & H to agree in writing to the terms of employment specified in the agreement. A & H, as alleged successor to the sheet metal operations of Workman, is claimed to be bound by the agreement and to have violated it by refusing the offer of plaintiff to supply union members to perform work, and by stating that it was going to operate a non-union shop.

■ Defendants argue that A & H was not obligated to assume the obligations of Workman's contract. Whether this is true is not relevant to the jurisdictional issue. A violation of a collective bargaining agreement has been alleged. This confers jurisdiction on the Court to decide the controversy. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), and United States Steel Workers of America v. Reliance Universal Inc. of Ohio, 335 F.2d 891 (3d Cir. 1964).

■ Before the present suit was begun, plaintiff filed a charge under 29 U.S.C. § 160 with the NLRB alleging that acts which are the subject of this suit constituted an unfair labor practice under § 8 of the L.M.R.A., 29 U.S.C. § 158. It may be assumed (without deciding) that the Board had jurisdiction to deal with the charge. However, its jurisdiction was not exclusive in the cir-

cumstances of this case. Neither a Federal court nor the NLRB has exclusive jurisdiction to deal with a transaction which constitutes both an unfair labor practice under § 8 and a violation of a collective bargaining agreement for which jurisdiction is conferred by § 301. In Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) the court said at p. 197, 83 S.Ct. at p. 269:

"The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301."

■ The contention of the defendants that Congress has reposed exclusive jurisdiction over the instant controversy in the NLRB is unfounded. It is based upon Myers v. Bethlehem Ship Building Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638 (1938). That case was decided in 1938. At the time, § 10(a) of the National Labor Relations Act, 49 Stat. 449 (1935) vested exclusive jurisdiction in the Board to prevent unfair labor practices. The provision giving the Board exclusive jurisdiction was eliminated in 1947 by § 10(a) of the Labor Management Relations Act, 29 U.S.C. § 160. The distinction between the two laws was noted in Amazon Cotton Mill Co. v. Textile Workers Union, 167 F.2d 183, 187 (4th Cir. 1948). Section 301 of the L.M.R.A., 29 U.S.C. § 185, which conferred jurisdiction upon the federal courts over labor contract violations was likewise passed in 1947, years after *Myers* was decided, and is the reason for the holding in Smith v. Evening News Ass'n, *supra*, that under circumstances comparable to those in this case jurisdiction exists in both the Board and the federal court.

### Res Judicata

The unfair labor practice charge which plaintiff filed with the NLRB was based upon the same facts involved in this case. Presumably, after the trial

examiner had investigated and considered the charge, the Regional Director[1] by letter dated August 6, 1971, advised plaintiff that he was refusing to issue a complaint. He said:

"[T]here is no evidence to establish that either Employer engaged in any conduct violative of Section 8(a) (1) of the Act. In the absence of a substantial number of Workman employees working for A & H Metals, the new Employer could not be deemed to constitute a successor employer. Accordingly, it is not bound to assume the collective bargaining agreement between the prior employer and the union. Tallakson Ford, Inc. 171 NLRB No. 67. I am, therefore, refusing to issue Complaint in this matter."

The same letter informed plaintiff of its right to a review of the decision by the Acting General Counsel of the NLRB. Plaintiff took no appeal and the time for doing so has expired.

■ Defendants contend that since the facts which underlay the charge before the Board were the same as those alleged in the complaint, the action of the Regional Director is a bar to the present suit under the doctrine of *res judicata*. The reported decisions support a contrary conclusion.

The only judicial expression precisely in point is found in Thomas v. Consolidated Coal Co., 380 F.2d 69 (4th Cir. 1967), cert. denied, 389 U.S. 1004, 88 S. Ct. 562, 19 L.Ed.2d 599, reh. denied, 389 U.S. 1059, 88 S.Ct. 768, 19 L.Ed.2d 862, where, under circumstances not significantly different from those at bar, the court said by way of dictum (p. 78) that refusal of the NLRB to issue a complaint at the behest of a union member against an employer was not a *res judicata* defense to a suit by the union members under § 301. Courts have come to the same conclusion when federal juris-

diction is alleged in an action for damages under § 303 of the L.M.R.A., 29 U.S. C. § 187. Aircraft & Engine Maintenance v. I. E. Schilling, 340 F.2d 286 (5th Cir. 1965), cert. denied, 382 U.S. 972, 86 S.Ct. 528, 15 L.Ed.2d 464, Aircraft & Engine Maintenance & Overall Building v. Oolite Concrete Co., 341 F.2d 210 (5th Cir. 1965), cert. denied, 382 U.S. 972, 86 S.Ct. 528, 15 L.Ed.2d 464 and Taube Electrical Contractors Inc. v. International Brotherhood of Electrical Workers, 261 F.Supp. 664 (S.D.Fla.1966). The same thing is true where the jurisdictional basis of the federal action was § 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412, Boggs v. International Brotherhood of Electrical Workers, 326 F.Supp. 1 (D.Mont. 1971). The fact that jurisdiction in the last four cited cases was not asserted under § 301, as is presently the case, provides no substantial reason for holding them to be less applicable.

Properly analyzed, Painters District Council No. 38 v. Edgewood Contracting Co., 416 F.2d 1081 (5th Cir. 1969) does not support the *res judicata* defense. That case held that an NLRB determination that a union was guilty of an unfair labor practice based on a complaint[2] filed by the Board was *res judicata* as to the liability of the union for damages in a suit by the employer under § 303, 29 U.S.C. § 187. The court cited United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) as an example of the modern view that *res judicata* principles apply to administrative proceedings when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it after the parties have had an adequate opportunity to litigate. *Painters* then pointed out that in the case before it, the proceedings before the NLRB were of this kind. The court

---

1. He has been characterized as the "functionary agent" of the General Counsel. Leeds & Northrup Co. v. NLRB, 357 F.2d 527, 534 (3d Cir. 1966).

2. For the fact that a complaint had been filed, see *Painters District Council No. 38, etc.* and *Edgewood Contracting Co.,* 153 NLRB 797, 798 (1965).

noted that it was only after a full hearing[3] that the trial examiner had issued a cease and desist order, and that thereafter, following exceptions by the union, the Board affirmed the trial examiner's findings. In the case at bar, the proceedings before the NLRB never reached the point where a complaint was issued.

Section 3(d) of the L.M.R.A., 29 U.S. C. § 153(d) reposes upon the General Counsel of the Board final authority with respect to the investigation of charges and the issuance of complaint. He has an unreviewable discretion to refuse to institute an unfair labor practice complaint. Terminal Freight Cooperative Ass'n v. NLRB, 447 F.2d 1099, 1102 (3d Cir. 1971). It is only after a complaint issues that the adjudicatory phase of the administrative process arises. Leeds & Northrup Co. v. NLRB, *supra,* at 535.

Chasis v. Progress Manufacturing Co., 256 F.Supp. 747 (E.D.Pa.1966) relied upon by defendants, is readily distinguishable from the case *sub judice* and is inapposite.

### Exhaustion of Remedies

■■ Defendants contend that since plaintiff failed to appeal to the General Counsel of the NLRB from the adverse decision of the Regional Director, plaintiff has failed to exhaust the administrative remedy available to it and under the preemption doctrine the action should be dismissed. This argument is without merit. Smith v. Evening News Ass'n, *supra,* at 197. It is true that in *Smith* no processing of the unfair labor charge before the Board had been instituted whereas here such a proceeding had been begun but plaintiff's attempt to obtain administrative relief was abandoned short of conclusion. Plaintiff's action before the Board did not constitute an election of remedy which foreclosed this

suit for no inconsistency in the facts exists between the position which plaintiff took before the Board and that which it now asserts. See discussion in Abdallah v. Abdallah, 359 F.2d 170, 174–175 (3d Cir. 1966) and Stalker v. Southeastern Oil Delaware, 103 F.Supp. 436, 438 (D. Del.1952).

### *Failure of Complaint to State a Claim*

The complaint charges that Workman violated two provisions of the collective bargaining agreement, Article III, Section 1 and Article II, Section 1.

Article III, Section 1 reads:

"SECTION 1. The Employer agrees that none but journeymen and apprentice sheet metal workers shall be employed on any work described in Article I."

The complaint alleges that on March 4, 1971, Workman discontinued its sheet metal operations, laid off members of plaintiff doing the work, and advised plaintiff on or about March 8, or 9, 1971, that its sheet metal operations were to be performed by non-union employees. Notwithstanding these allegations, the complaint fails to allege that Workman ever employed anyone other than journeymen or apprentice sheet metal workers on the work described in Article I. Plaintiff therefore has no basis for claiming that Workman violated Article III, Section 1.

Article II, Section 1 reads:

"SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay, and working conditions, hiring and other matters cov-

---

3. At 416 F.2d 1084 it was said:
   "The District Judge found that the Board had conducted a full hearing, with the present parties represented by counsel (the same counsel as in the instant action), with full opportunity to present evidence, and to call, examine and cross-examine witnesses. Both parties made oral arguments."

ered hereby for the duration of the project."

■ This imposes no obligation on Workman to obtain a written agreement from any business successor which Workman might have after Workman discontinued its own operations. Rather, it relates to Workman's obligation while its business is continuing and it subcontracts or assigns work for which, as against the subcontractor or assignee, it has primary responsibility. Article II. Section 1 states that Workman must obtain an agreement from the assignee or subcontractor "for the duration of the project". This suggests pointedly that the provision was intended to be limited to particular jobs on which Workman had assigned or subcontracted the work during Workman's operation, and that its purpose was not to prevent Workman from going out of business without first obtaining from its successor a written agreement to be bound by the terms of the union contract.

*The complaint fails to allege a valid cause of action against Workman.*

As to plaintiff's claim against the defendant A & H, it will be assumed that the latter was within legal contemplation a "successor" to the Workman sheet metal business, in all respects except its employment of a substantial number of Workman's employees if this is necessary to establish successor status. See letter dated August 6, 1971, from the Regional Director to the plaintiff.

■ Defendant's argument that the complaint fails to state a cause of action is based upon the theory that before the plaintiff tendered union employees to A & H, the latter had already hired non-union employees, and hence that it would be discriminatory and an unfair labor practice to require A & H to employ the union members in lieu of the non-union labor. The chronology of events alleged in the complaint discloses that this argument rests upon a false factual premise. The complaint alleges that on March 22, 1971, A & H advised plaintiff that Workman sheet metal operations "were

to be performed" only by non-union employees, that a new company "was going to be non-union" following which plaintiff offered to supply A & H union labor to perform the work. The complaint then alleges that on or about March 25, 1971, A & H commenced sheet metal operations. These allegations must, of course, be accepted as true for purposes of the motion to dismiss. They refute defendants' contention that non-union employees had been hired by A & H before plaintiff tendered its union members. Under the allegations of the complaint, plaintiff's tender was made three days before A & H began operations. It cannot be presumed that A & H hired any labor, non-union or otherwise, before it began to do business, in the absence of an explicit allegation to this effect.

### Counterclaim.

■ The defendants' counterclaim alleges that because the Regional Director refused to issue an unfair labor practice complaint against the defendants, the instant action was begun wilfully, wantonly and without just cause to the harassment, damage and injury of the defendants and constitutes an abuse of process of the Court. Whether or not the NLRB complaint should have issued was discretionary with the General Counsel, Terminal Freight Cooperative Ass'n v. NLRB, *supra.* Since no complaint issued, the administrative adjudicatory process before the NLRB was never begun, Leeds & Northrup Co. v. NLRB, *supra.* This Court has jurisdiction under § 301 of the L.M.R.A. to decide whether the bargaining agreement was violated. Under these circumstances the filing of the complaint was justified even though it should ultimately be held that it is without merit.

The motions of plaintiff to dismiss the counterclaim and for judgment on the affirmative defenses, and the motion of Workman to dismiss the complaint, are granted. The motion of A & H Metals to dismiss the complaint is denied.