James P. PURVIS d/b/a Purvis Construction Company,

and

General Insurance Company of America, a corporation, Plaintiffs,

v.

GREAT FALLS BUILDING AND CONSTRUCTION TRADES COUNCIL et al., Defendants.

Civ. No. 2654.

United States District Court
D. Montana,
Great Falls Division.

April 5, 1967.

Howard C. Burton and H. William Coder, Great Falls, Mont., for plaintiffs.

Leo Graybill, Jr., Benjamin W. Hilley, Great Falls, Mont., for defendants other than defendant Elevator Constructors Local Union No. 60.

Holland & Holland, Butte, Mont., for defendant, Elevator Constructors Local Union No. 60.

## OPINION

RUSSELL E. SMITH, District Judge.

The complaint alleges that the plaintiff, James P. Purvis is a contractor who was engaged in the construction of a new hospital and nurses' home in Great Falls, Montana, and at about the same time engaged as a member of a joint venture in the construction of a low rent housing project on the Blackfoot Indian Reservation.

The joint venture sublet the electrical work in the Reservation project to a non-union contractor named Browning Electric. For the purpose of forcing Purvis to cease doing business with Browning Electric unless Browning Electric should sign a collective bargaining agreement with the defendant, Electrical Workers Local Union No. 122, the defendants established a picket line at the Deaconess Hospital job which the members of the defendant unions refused to cross. The resulting work stoppage caused serious damage to the plaintiff. It is claimed that the defendants' conduct was in violation of the national labor relations laws.[1] Plaintiff by this action seeks to recover damages.

The defendants have moved to strike from the complaint allegations and exhibits which disclose proceedings before the National Labor Relations Board. A complaint charging the Great Falls Building and Construction Trades Council with unfair labor practices was filed with the Board. The Board issued a complaint and noticed it for hearing on September 24, 1964. On the 23rd of September, 1964 a Settlement Stipulation was executed by the parties. The stipulation contained little in the way of fact recitations and specifically provided that the Trades Council did not by the execution of the stipulation admit to having violated the law. The stipulation did agree upon the kind of an order which the Board might enter, and the Board did thereupon issue an order in accordance with the stipulation. That order required the defendant Trades Council to cease and desist from forcing or attempting to force Purvis to cease doing business with Browning Electric. The order was later enforced by decree of the Court of Appeals for the Ninth Circuit.

Unless the order of the Board as enforced by the court constitutes an estoppel or is res judicata on the issue of the unlawful labor practices charged in this case, it is not material and facts

I. Sections 158(b) (4) and 187 of Title 29, U.S.C.A.

relating to it should be stricken. A tower of words can be constructed which would support the conclusion that a cease and desist order of the National Labor Relations Board enforced by a court of appeals is res judicata and in some cases it may very well be. An order of the National Labor Relations Board based on a full hearing and merged in a court decree is required to be treated as a decree of the court.[2]

■■ Normally a decree determining an issue in a case controls that same issue in other cases between the same parties.[3] A decree entered by consent may have the same effect as a decree entered in a case which has been fully litigated.[4]

■ Putting these rules together the court might conclude that the cease and desist order here enforced by the court of appeals necessarily implied the previous commission of an unfair labor practice. Looking at the problem realistically, however, it appears to the court that this reasoning should be followed here only, if as a matter of policy,[5] a party who has an opportunity to litigate should be required to litigate or be forever foreclosed from thereafter contesting what might be implied from a decree entered by consent. Otherwise no reason exists in this case for the application of estoppel or res judicata doctrines because the Board made no findings of fact; it did not decide whether the trades council had violated a contract or had been guilty of an unfair labor practice. Its order and the subsequent court decree were all based upon a stipulation which made no fact admissions and which recited that no admission of unlawful conduct was made. Hence, there was not an adjudication in the sense that relevant facts were determined and applied to the relevant law nor was there any real admission of unlawful conduct.[6]

■■ As a matter of policy the court believes that the parties should be free to do what was done here; stipulate to the entry of an order without being held to have admitted a violation of the law. Certainly the chief purpose of the federal laws relating to labor is to keep the flow of commerce moving. To that end the sooner a picket line is abandoned or a strike settled, the better for all concerned even if some of the problems arising from the conduct of the parties result in litigation at a later time. Had the parties been unable to agree on the inclusion of the no admission clause in the stipulation here, the work stoppage might have continued much longer than it did.

■ It is therefore decided that a court enforced cease and desist order of the National Labor Relations Board, based upon a stipulation which makes no admissions of unlawful conduct, and which specifically recites that such admissions are not made is not res judicata and does not constitute an estoppel by

---

2. "But it is plain that the scheme of the Act contemplates that when the record has been made and is finally submitted for action by the Board the judgment 'shall be final.' It is to have all the qualities of any other decree entered in a litigated cause upon full hearing, and is subject to review by this court on certiorari as in other cases." International Union of Mine, Mill and Smelter Workers, et al. v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 339, 65 S.Ct. 1166, 1168, 89 L.Ed. 1649 (1945).

3. Sunshine Anthracite Coal Company v. Adkins, 310 U.S. 381, 402, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).

4. The cases are collected in 2 A.L.R.2d 514. The note is supplemented in later Case Service, Vol. 1, p. 152.

5. Policy is considered in the application of res judicata doctrines. See 2 A.L.R.2d, p. 532, and Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962).

6. See Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876). The same reasoning which excludes evidence of compromise offers should be applicable here. See Wigmore on Evidence, Sec. 1061, 3d ed. 1940.

judgment in an action for damages based on the conduct complained of in the proceedings before the board. An order in conformity with this opinion is issued contemporaneously herewith.